**EXHIBIT A**

| | |
|---|---|
| District Court, County of Larimer<br>201 LaPorte Avenue, Suite 100<br>Ft. Collins, CO 80521 | DATE FILED<br>January 28, 2025 1:27 PM<br>FILING ID: C5788DD236179<br>CASE NUMBER: 2025CV30086 |
| **KEYA KALANTARI**<br><br>And<br><br>**ETHAN LAGE**,<br><br>      Plaintiffs,<br>v.<br><br>**CHENEGA GLOBAL PROTECTION, LLC**, an<br>Alaska corporation,<br><br>      Defendant. | <br><br><br><br><br><br><br><br><br>COURT USE ONLY |
| Trent R. Taylor Atty Reg. 61007<br>David H. Miller, Atty Reg. 8405<br>THE WILHITE & MILLER LAW FIRM<br>1600 N. Ogden Street<br>Denver, Colorado 80218<br>Phone: (303) 839-1650<br>Facsimile: (303) 832-7102<br>ttaylor@wilhitelawfirm.com<br>dhmiller@wilhitelawfirm.com<br>Attorneys for the Plaintiff | Case No:<br><br>Division: |
| **INDIVIDUAL AND CLASS ACTION COMPLAINT** | |

The Plaintiffs, Keya Kalantari ("Kalantari") and Ethan Lage ("Lage") (collectively "Plaintiffs") on behalf of themselves and all others similarly situated, by and through the undersigned counsel from the Wilhite & Miller Law Firm, pursuant to Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.*, and the Colorado Overtime and Minimum Pay Standards Orders, 7 CCR 1103-1 (2022-2025) (collectively "Colorado Wage and Hour Law"), as their Individual and Class Action Complaint against the Defendants, Chenega Global Protection, LLC ("Chenega" or "Defendant"), and state as follows:

**PARTIES**

1.     Plaintiffs Kalantari and Lage are Colorado residents.

1

2.      Kalantari was employed by Defendant from approximately July of 2019 to July 31, 2024.

3.      Lage was employed by Defendant from approximately March of 2018 until approximately April of 2024.

4.      Plaintiffs may be contacted through their counsel of record at the Wilhite & Miller Law Firm, located at 1600 N. Ogden Street, Denver, Colorado 80218.

5.      Chenega is an Alaska company, the principal office for which is located at 3000 C Street, Suite 301, Anchorage, AK, 99503, which also serves as its principal mailing address.

6.      According to its registration with the Colorado Secretary of State, Chenega's registered agent is Cogency Global, Inc., located at 617 17th Street, Suite 1450S, Denver, CO 80202.

## JURISDICTION AND VENUE

7.      Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

8.      This Court has original jurisdiction over this civil action pursuant to Article 6 § 9(1) of the Colorado Constitution.

9.      Chenega maintains a security services operation in Larimer County, Colorado and conducts substantial business in this jurisdiction.

10.     The facts and circumstances giving rise to this Complaint occurred in Larimer County, Colorado.

11.     Venue is proper under C.R.C.P. 98 (b) and (c) because Chenega conducts business in Larimer County, Colorado and Plaintiffs seek penalties under the C.R.C.P. Rule 98(b)(1).

12.     This case is brought under C.R.C.P. Rule 16 because Plaintiffs and the putative class members seek a monetary judgment from the Defendant of more than $100,000, exclusive of interests and costs. *See* C.R.C.P. Rule 16.1(b)(2).

## FACTUAL ALLEGATIONS

13.     Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

14. At all times relevant to this Complaint, Plaintiffs and the Class Members were "employee[s]" of Chenega under the Colorado Wage and Hour Law. See C.R.S. § 8-4-101(5).

15. Chenega is an international security company which provides physical security and fire and emergency management services to U.S. Government customers around the world.

16. At all times relevant to this Complaint, Plaintiffs and the putative class members performed labor or services for the benefit of Chenega.

17. Chenega received revenue for the work performed by Plaintiffs and the putative class members.

18. Kalantari worked as a security guard and sergeant for Defendant at the United States Center for Disease Control ("CDC") campus in Ft. Collins, Colorado from approximately July 2019 until approximately July 2024.

19. Lage worked as a security guard at the CDC campus in Ft. Collins, Colorado from approximately March 2018 until approximately April 2023.

20. In approximately April of 2023, Defendant promoted Mr. Lage to a supervisory position where he continued to work for Defendant at the CDC campus in Ft. Collins until approximately May 30, 2024.

21. Beginning in 2021, Kalantari's agreed-upon hourly rate for all work he performed in the security guard position was approximately $21.00/hour. On approximately December 1, 2023, Kalantari's agreed-upon hourly rate for all work he performed as a security guard was increased to approximately $24.15. On occasion, Defendant also employed Kalantari to perform similar duties as a Sergeant, where his agreed-upon rate at all times during his employment was approximately $26.45/hour.

22. When Lage began work for Defendant in 2018, his agreed-upon hourly rate of pay was $17.97/hour. In 2021, Defendant increased his hourly rate of pay to $21.45/hour. When he was promoted to a supervisor position, Defendant increased Lage's hourly rate of pay to $25/hour. Finally, in or around December 2023, Defendant increased Plaintiff Lage's hourly rate of pay to $28/hour.

23. Plaintiffs both worked as security guards and/or supervisory security guards at the CDC campus located in Ft. Collins, Colorado throughout all times of their employment for Defendant and were compensated on an hourly wage basis during all times of their employment.

24. During all times of Kalantari's employment, Defendant regularly required Kalantari to work approximately 42.5 hours a week, and when Defendant employed Plaintiff Kalantari to work as a sergeant, it regularly required him to work in excess of 42.5 hours a week.

3

25.     During all times of Lage's employment, Defendant regularly required Lage to work between thirty-one and forty-two and a half hours per week.

26.     On several occasions, Defendant employed Plaintiff Kalantari to work 12-hour shifts.

27.     At numerous times during the relevant time period, Defendant informed Plaintiffs and the putative class members that they were not allowed to leave their post during their meal "break," instructed them to keep their security radios turned on during their meal "breaks," and required them to respond to any communications directed at them or security alerts announced over the radio during their meal "breaks."

28.     In specific and in addition to other occasions during Mr. Kalantari's employment with Defendant, in August of 2022, Senior Lieutenant Nthan Greenwald interrupted Mr. Kalantair during his meal break.  Also on another occasion during the same time period, Mr. Kalantari was interrupted during his meal break by Captain David Neff. On previous occasions, Defendant threatened Plaintiff Kalantari with disciplinary action if he did not respond to work calls or requests during his meal break.

29.     In the fall of 2022, in addition to other interruptions of his meal breaks, Mr. Lage was called out during his designated lunch time to perform a vehicle inspection. In addition, in the winter of 2022, Mr. Lage was required to attend a suspicious vehicle training during his lunch break, which required him to be present for several hours of instruction.

30.     Despite refusing to permit Plaintiffs and the class members the ability to relieve themselves from their work duties during their Meal periods, Chenega refused and continues to refuse to compensate Plaintiffs or the putative class members for this work time.

31.     During all times material to this Complaint, Defendant paid Plaintiffs and the putative class members on a semi-monthly basis (usually on the 15th and 30th or 31st days of the month).

32.     During the relevant time period, Defendant engaged in an illegal policy of splitting up the work week to avoid the payment of overtime.

33.     For example, if the workweek, which ran from Sunday to Saturday, ended on a Wednesday and the relevant employee had worked 25 hours in the last calendar week of that pay period (Sunday – Wednesday), and then worked an additional 20 hours during the remainder of that workweek (Thursday – Saturday), Defendant would issue separate payments for 25 and 20 hours of regular pay during the different pay periods, even though the employee had worked 40 hours of regular time and 5 hours of overtime in the week combined.

34.     Plaintiff Kalantari complained to the company about its policy of splitting up the workweek in 2022 and on other occasions, but the Company did not correct its illegal policy.

35.    In addition, Plaintiff Lage, complained to Chenega's project manager about the same issue near the end of 2023, on behalf of himself and another employee of Chenega, but the Company again failed to correct its policy.

36.    Because of the aforementioned policies of Defendant, Chenega has continually failed to pay Plaintiffs and the putative class members all overtime owed to them for hours worked in excess of 40 per week, 12 in a day, or 12 consecutive hours without regard to the start and end time of their workdays.

37.    In addition, at all times during the relevant time period, Defendant has failed to allow any of the Plaintiffs or putative class members to take their legally required 10-minute rest breaks for each four hours they have worked in a given shift or any major fraction thereof.

38.    As a result, Defendant benefited from 10 minutes of work performed by Plaintiffs and the putative class members for each 10-minute rest break they were deprived of because Defendant required them to work during this otherwise would be paid rest time.

39.    Defendant did not pay Plaintiffs or the putative class members supplemental pay to compensate them for the 10-minute rest breaks they were denied during their employment.

40.    Around the end of 2022, the United States Department of Labor Wage and Hour Division ("WHD") commenced an investigation of Chenega for violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA").

41.    In August 2024, the WHD concluded its investigation finding that Chenega had violated the wage and hour provisions of the FLSA.

42.    Chenega is, or by law should be, in possession of the records from which the amount in damages related to Plaintiffs' and the putative class members' cause of action can be calculated.

43.    In October of 2024, Kalantari sent a written demand for his unpaid regular and overtime wages to Defendant Chenega.

44.    In November of 2024, Kalantari received a receipt of confirmation of delivery of his demand letter that was sent to Chenega, but has not received any response to his communication to date.

45.    14 days have passed since Chenega received Kalantari's written demand for wages, and it has failed to remit payment in any amount.

46.     Chenega has failed to pay Plaintiffs and the putative class members overtime premiums for all hours worked in excess of 40 per week or 12 in a day or 12 consecutive hours regardless of the start and end time of their workdays, has failed to provide compensated 10-minute rest breaks to Plaintiffs and the putative class members, and has failed to pay Plaintiffs and the putative class members all earned, vested, and determinable wages, in violation of the Colorado Constitution, Const. Art. 18, § 15, the Colorado Wage Act, C.R.S. 8-4-101 et seq., ("CWA"), and the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order"), 7 CCR 1103-1.

47.     Plaintiffs' and the putative class members'claims for unpaid wages and overtime under the CWA are limited to three years before the filing of this Complaint and toll until the resolution of this action.

48.     Accordingly, Defendant is liable to Plaintiffs and the putative class members for back wages, statutory damages and penalties, pre- and post-judgment interest, liquidated and penalty damages, reasonable attorney's fees and the costs of litigation, under the above referenced laws.

<u>CLASS ALLEGATIONS</u>

49.     Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

50.     In addition to bringing their claims individually, Plaintiffs also bring this case as a class action on behalf of a class of all similarly situated employees (the "Chenega Class") pursuant to C.R.C.P. 23.

51.     The Chenega Class is defined as follows:

> All non-exempt hourly employees who were employed by Chenega as officers, lieutenants, captains and/or sergeants performing guard duties at the Centers for Disease Control campus (CDC) in Ft. Collins, Colorado at any time during the time period dating back from three years prior to the filing of this Complaint until and through the present, who worked more than 2 hours during any given work shift

52.     The Class satisfies the prerequisites and requirements of C.R.C.P. 23 because:

> a.      The Chenega Class consists of at least fifty employees, and individual joinder of all such employees is impracticable but easily determinable through the employment records of the Defendant;

b.      There are questions of law and fact that are common to the Chenega Class, which questions predominate over issues affecting only individual Class Members, including:

   i.      Whether Chenega had a policy or practice of failing to properly compensate hourly employees for work they performed during their meal breaks;

   ii.      Whether Chenega required the Chenega Class Members to perform work during their meal breaks;

   iii.      Whether Chenega permitted Plaintiffs and the Chenega Class Members to take a ten-minute rest break for every 4 hours or major fraction thereof that they worked in a given work shift:

   iv.      Whether Chenega's policies or practices violated the CWA;

   v.      The nature of the damages due to Plaintiffs and the Chenega Class Members for Chenega's violations of the CWA; and

   vi.      Whether Chenega's violations of the CWA were willful, as alleged.

53.      The Plaintiffs' claims are typical of the Chenega Class Members' claims in that, like all other members of the purported class, and for the same reasons, they were not properly granted 10-minute rest breaks, not compensated for work they performed during their unpaid rest breaks, and/or not fully compensated for all overtime hours they worked.

54.      The Plaintiffs will fairly and adequately protect the interests of the Chenega Class. They have retained counsel that is experienced in wage and hour class litigation. The Plaintiffs and their counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Chenega Class.

55.      The prosecution of this case as a class action is superior to other methods of adjudication. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Chenega and potentially conflicting results for the more than 50 individual Chenega workers in matters involving relatively small individual amounts of damages.

56.      Adjudications with respect to individual Class Members would, as a practical matter, be dispositive to the interests of the other Class Members or substantially impair or impede their ability to protect their interests.

57.    Moreover, Chenega has acted on grounds generally applicable to the Chenega Class.

58.    On information and belief, no Chenega Class Member has expressed any interest in controlling the prosecution of a separate action or commenced their own litigation.

59.    Because of the uniformity of claims alleged in this Complaint and the fact that the Chenega Class claims will be the subject of representative documentary evidence and testimony that the law requires the Defendant to maintain with respect to all class members, this matter will be easy for the Court to manage within this jurisdiction and venue.

60.    Within the larger Chenega Class of plaintiffs, Plaintiffs assert claims on behalf of a sub-class, known as the "Overtime Sub-Class").

## Overtime Sub-Class Allegations

61.    Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as though set forth fully herein.

62.    Within the Chenega Class, Plaintiffs additionally bring claims on behalf of a sub-class of individuals known as the "Overtime Sub-Class."

63.    The Overtime Sub-Class is defined as:

> All members of the Chenega Class who worked more than forty (40) hours in any given work week, or more than twelve (12) hours consecutively, during the time period commencing three years prior to the date of the filing of this Complaint and stretching up until and through the present.

64.    The Class satisfies the prerequisites and requirements of C.R.C.P. 23 because:

a.    There are questions of law and fact that are common to the Overtime Sub-Class, which questions predominate over issues affecting only individual sub-Class Members, including:

i.    Whether Chenega's practice of splitting up payment for hours worked in the same work week deprived Plaintiffs and the Chenega Class Members of overtime pay;

ii.    Whether Chenega properly compensated Plaintiffs and the Overtime Sub-Class Members at the applicable overtime rate when it required Plaintiffs and the Overtime Sub-Class Members to perform work during their meal breaks during a work week in which they worked more than forty (40) hours combined

8

      iii.      Whether Chenega's policies or practices violated the CWA;

      iv.      The nature of the damages due to Plaintiffs and the Overtime sub-Class Members for Chenega's violations of the CWA; and

      v.      Whether Chenega's violations of the overtime provisions of the CWA were willful, as alleged.

65. The Plaintiffs' claims are typical of the Overtime Sub-Class Members' claims in that, like all other members of the purported sub-class, and for the same reasons, they were not fully compensated for all overtime hours they worked.

66. The Plaintiffs will fairly and adequately protect the interests of the Overtime Sub-Class. They have retained counsel that is experienced in wage and hour class litigation. The Plaintiffs and their counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Overtime Sub-Class.

67. The prosecution of this case as a class action is superior to other methods of adjudication. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Chenega and potentially conflicting results in matters involving numerous workers and relatively small individual amounts of damages.

68. Adjudications with respect to individual sub-class members would as a practical matter be dispositive to the interests of the other sub-class members or substantially impair or impede their ability to protect their interests.

69. Moreover, Chenega has acted on grounds generally applicable to the Overtime Sub-Class.

70. On information and belief, no Overtime Sub-Class Member has expressed any interest in controlling the prosecution of a separate action or commenced their own litigation.

71. Because of the uniformity of claims alleged in this Complaint and the fact that the Overtime Sub-Class claims will be the subject of representative documentary evidence and testimony that the law requires the Defendant to maintain with respect to all sub-class members, this matter will be easy for the Court to manage within this jurisdiction and venue.

## COUNT I:
VIOLATIONS OF THE COLORADO WAGE AND HOUR LAW
C.R.S. § 8-4-101 et seq.; 7 CCR 1103-1
Failure to Pay Overtime Premiums

**On Behalf of Plaintiffs and the Overtime Sub-Class Members**

70.     Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

71.     At all times relevant to this Complaint, Defendant has been the Plaintiffs' and the Overtime Sub-Class Members' employer" under the CWA. C.R.S. § 8-4-101(6) ("'Employer has the same meaning as set forth in the federal 'Fair Labor Standards Act', 29 U.S.C. sec. 203(d)") and 7 CCR 1103-1, Rule 1.6.

72.     At all times relevant to this Complaint, Plaintiffs and the Overtime Sub-Class Members were or have been Defendant's "employee[s]" under the CWA. C.R.S. § 8-4-101(5) and 7 CCR 1103-1, Rule 1.5.

73.     Plaintiffs and the Overtime Sub-Class Members have regularly worked in excess of 40 hours per week, or 12 hours in a day regardless of their start and end times.

74.     Defendant has regularly employed Plaintiffs and the Overtime Sub-Class Members to work in excess of 40 hours in a work week.

75.     During all times of Plaintiffs and the Overtime Sub-Class Members' employment, Defendant has required Plaintiffs and the Class Members to work through their unpaid lunch breaks.

76.     In addition, Defendant has maintained a consistent practice of splitting up the hours Plaintiff and the Overtime Sub-Class Members have worked between pay periods, thereby which it has avoided the payment of overtime premiums to Plaintiffs and the Overtime Sub-Class Members.

77.     For all times the defendant required Plaintiffs and the Overtime Sub-Class Members to work during a meal period in a week which Plaintiffs and the Overtime Sub-Class Members worked overtime, Defendant owes them back wages at their applicable overtime rate.

78.     In addition, Defendant owes Plaintiffs and the overtime Sub-Class Members overtime pay for all hours they have worked over forty (40) in a given work week, but were not compensated for at the premium rate because Defendant has not properly record the total hours they worked in the established work week.

79.     Because Chenega was aware, or should have been aware, that its conduct has violated the CWA, but nevertheless failed to pay Plaintiffs and the Overtime Sub-Class Members their overtime wages, its violations are willful.

80.     As a result, Chenega has failed to pay Plaintiffs and the Overtime Sub-Class Members at their overtime rate for all hours worked in excess of 40 per week, or 12 in a day regardless of start

10

and end time, during the time period beginning three years preceding the filing of this Complaint up until and through the filing of this Complaint.

81.    Defendant's failure to fully pay Plaintiffs and the Overtime Sub-Class Members back pay will make it liable not simply for back wages, but also statutory damages, penalties and liquidated damages set out in the above law, along with reasonable attorney's fees, pre-and post-judgment interest and litigation costs, as will be proven at trial.

**<u>COUNT II:</u>**
VIOLATIONS OF THE COLORADO WAGE AND HOUR LAW
C.R.S. § 8-4-101 et seq.; 7 CCR 1103-1, Rule 5.1
Failure to Comply with State Rest and Meal Break Requirements
**On Behalf of Plaintiffs and the Chenega Class Members**

82.    Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

83.    Under Colorado law, employees are entitled to paid ten-minute rest breaks, for every four hours of work, or major portions thereof. 7 CCR 1103-1, Rule 5.2.

84.    In addition, under Colorado law, employees are entitled to a thirty minute unpaid meal break.  If an employee is required to perform work during a meal break, he/she must be compensated for the entire duration of the 30-minute meal break. *See* 7 CCR 1103-1, Rule 5.2.

85.    Defendant has failed to provide Plaintiffs and the Class Members rest breaks at any time during the statutory time period.

86.    In addition, Defendant has regularly required Plaintiffs and the Chenega Class Members to work during their meal breaks

87.    For every rest break Plaintiffs and the Class Members have been denied, Chenega has effectively extended their shifts by 10 minutes without compensation for that time. 7 CCR 1103-1, Rule 5.2.4.

88.    Defendant, by automatically deducting 30 minutes of time from the Plaintiffs and Class Members shifts, regardless of whether they actually received a 30-minute uninterrupted meal period, has failed to compensate Plaintiff and the Chenega Class Members for work they have been required to perform during their meal breaks.

89.    Rest periods must be paid at either the employee's agreed upon rate of pay, or the legally required rate of pay, whichever is higher. 7 CCR 1103-1, Rule 5.2.4.

11

90.    Because Defendant has regularly required Plaintiffs and the Class Members to work in excess of forty (40) hours a week, Plaintiffs and the Chenega Class Members are owed back pay for each rest break they have been denied at their applicable overtime rate for all rest breaks they have been denied during weeks in which they also worked in excess of forty (40) hours.

91.    For workweeks in which Plaintiffs and the Class Members have worked forty (40) hours or less and were denied 10-minute rest breaks, Defendant owes Plaintiffs and the Chenega Class Members unpaid wages for that time at their regular rate of pay.

92.    The records of Plaintiffs' and the Chenega Class Members' number of rest breaks owed are or should be in the exclusive control of the Defendant.

93.    Because Chenega was aware, or should have been aware, that its conduct has violated the CWA, but nevertheless failed to provide compensated 10-minute rest breaks and/or uninterrupted meal breaks to Plaintiffs and the Chenega Class members, its violations are willful.

94.    Chenega has failed to and continues to fail to provide all rest and uninterrupted meal breaks as required by law, and as a result owes Plaintiffs and the Class Members for such back wages, statutory damages, along with reasonable attorney's fees, pre- and post-judgment interest and litigation costs, as will be proven at trial, and subject to the conditions of controlling law cited above,

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask the Court to issue a judgment in their favor and against the Defendant, ordering:

A.    An award of unpaid back overtime wages to Plaintiffs and the Overtime Sub-Class under the CWA;

B.    an award of unpaid back break time wages to Plaintiffs and the Chenega Class Members under the CWA;

C.    An award of statutory damages, willful damages, liquidated damages, and penalties to Plaintiffs and the Chenega Class Members as proven at trial under the CWA.;

D.    That Defendant pay the Plaintiffs' and the Chenega Class Members reasonable attorney's fees and costs incurred in bringing the Plaintiff's claims, along with pre- and post-judgment interest and costs;

E.    An award of service payments to the named Plaintiffs for their services on behalf of the Chenega Class in this litigation; and

F.    A declaratory judgment finding that the Defendant violated controlling state law concerning its illegal wage and hour practices; and,

G.    Any other and further relief that may be equitable and just.

Dated this 28th day of January, 2024.

Respectfully submitted,
/s/ *Trent R. Taylor*_____
Trent R. Taylor (61007)
David H. Miller (8405)
Wilhite & Miller Law Firm
1600 Ogden Street
Denver, Colorado 80218
303.839.1650
Ttaylor@wilhitelawfirm.com
dhmiller@wilhitelawfirm.com
*Attorneys for Plaintiff*

13