IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-00961-CNS-NRN

KEYA KALANTARI and
ETHAN LAGE,

      Plaintiffs,

v.

CHENEGA GLOBAL PROTECTION, LLC, an Alaska corporation,

      Defendant.

---

**ORDER**

---

Before the Court is Plaintiffs' fully briefed Motion for Hybrid Conditional Class and Collective Action Certification. ECF No. 30. It is GRANTED IN PART and DENIED IN PART. In ruling on Plaintiffs' certification motion, the Court presumes familiarity with the parties' certification briefing and attendant evidentiary submissions, and the legal standards governing the Court's certification analysis. *See, e.g.* Fed. R. Civ. P. 23; 29 U.S.C. § 216(b).

## I.     ANALYSIS

The Court has carefully reviewed the parties' certification briefs. At bottom, the parties' dispute whether Plaintiffs have met their class and collective certification burdens. *Compare generally* ECF No. 30, *with* ECF No. 35. The Court agrees with Plaintiffs they have met their class and collective certification burdens, addressing their requests for

1

class certification and FLSA collective certification in turn below. However, the Court declines at this time to approve Plaintiffs' proposed class action notice and opt-out forms, and collective action notice and consent forms. Explained further below, the parties are ordered to confer regarding such forms.

### A. Class Action Certification

Plaintiffs seek certification of a Rule 23(b)(3) class premised on Defendant's alleged wage violations.[1] *See, e.g.,* ECF No. 30 at 5. The parties acknowledge and identify the Rule 23(a) and Rule 23(b)(3) burdens that Plaintiffs must satisfy. *See, e.g. id.*; ECF No. 35 at 3. Considering them in turn, Plaintiffs have met these burdens, demonstrating Rule 23 class certification is proper.

### i.     Rule 23(a)

**Numerosity.** The Court agrees with Plaintiffs that they have met their numerosity burden. *See* ECF No. 30 at 6. Analyzing Plaintiffs' proposed Chenega class, which Plaintiffs define as "non-exempt hourly employees who were employed by Chenega as officers, lieutenants, captains and/or sergeants performing guard duties at the Centers for Disease Control campus," *id.* at 5, Plaintiffs have put forth evidence showing that joinder of such employees would be impracticable, *see* Fed. R. Civ. P. 23(a)(1).[2] *See also*

---

[1] Plaintiffs acknowledge that their "Overtime Class is a sub-class of the Chenega Class." *See* ECF No. 30 at 6 n.1. The Court's Rule 23(a) and Rule 23(b)(3) analyses cover both the subclass and class. *See id.* As the Court's analyses makes clear, Plaintiffs have put forth evidence, and identified ample questions, regarding Defendant's common wage policies, as well as their common meal and rest break policies, illustrating that both certification of the class and subclass is proper.

[2] In their Reply, Plaintiffs "agree" to revise their proposed class definition to *exclude* "lieutenants" and "captains." *See* ECF No. 42 at 7. The Court accepts this revision and discusses it later, after analyzing Rule 23(a) and Rule 23(b)(3)'s requirements.

ECF No. 30-2 at 4; ECF No. 30-2 at 2. Notably, Defendant does not seriously challenge Plaintiffs' numerosity evidence, *see generally* ECF No. 35, but regardless the Court's independent analysis of Plaintiffs' evidentiary submissions confirm that Plaintiffs have met their Rule 23(a)(1) numerosity burden. *See, e.g. Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) ("Plaintiffs must offer *some* evidence of established, ascertainable numbers constituting the class." (citation modified) (emphasis added)); *D.B.U. v. Trump*, 349 F.R.D. 228, 236 (D. Colo. 2025) (determining numerosity conclusion was bolstered by respondents' "failure to meaningfully brief this issue, essentially conceding it" (citation modified)).[3]

**Commonality.** The Court agrees with Plaintiffs that they have met their commonality burden. *See, e.g.,* ECF No. 30 at 7. They have identified several common questions of law and fact in their certification motion, including whether Defendant had a "a policy or practice of failing to properly compensate hourly employees for work they performed during their meal breaks"; whether Defendant required putative class members to perform work during meal breaks; whether Defendant adequately permitted putative class members to take rest breaks; and whether Defendant split work weeks to avoid paying overtime, and relatedly whether Defendant properly compensated putative class and sub-class members with their overtime. *See* ECF No. 30 at 8. Setting aside that

---

[3] For substantially the same reasons, the Court concludes that Plaintiffs' proposed class is ascertainable. *See, e.g., In re HomeAdvisor, Inc. Litig.*, 345 F.R.D. 208, 220 (D. Colo. 2024) ("Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class." (citation modified)). Plaintiffs and potential class members may be identified using objective criteria, including Defendant's own employment records. Therefore, the class is ascertainable. *See, e.g., id.* at 220–21 (""An identifiable class exists if its members can be ascertained by reference to objective criteria. If the class members are identifiable using a defendant's records, then the class is ascertainable." (citation modified)); ECF No. 30 at 2.

plaintiffs need only identify one question of law or fact, *see* Fed. R. Civ. P. 23(a)(2), in order to meet their class *commonality* burden, *see, e.g., Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018), Plaintiffs' briefing here demonstrates that they have identified several that enable them to meet this burden. Indeed, resolution of any issue that Plaintiffs identify "will resolve an issue that is central to the validity of each one of the claims in one stroke," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), and certainly show that proceeding on a class basis has the capacity to "generate common answers" as to questions attendant to each claim "apt to drive the resolution of the litigation," *id.* (citation modified). *See also Suaverdez v. Circle K Stores, Inc.*, No. 20–cv–01035–RM–NYW, 2021 WL 4947238, at *4 (D. Colo. June 28, 2021), *report and recommendation adopted*, No. 1:20–cv–01035–RMR–NYW, 2021 WL 5513740 (D. Colo. Oct. 19, 2021) (concluding *commonality* burden met where common question of fact existed as to whether "class members were allegedly denied meal and unpaid rest breaks" and common question of law existed as to "whether this alleged denial violated Colorado wage-and-hour laws").

Defendant devotes much of its *commonality* arguments to whether Plaintiffs have met their related, but still distinct, Rule 23(b)(3) *predominance* burdens. *See* ECF No. 35 at 6. The Court discusses Rule 23(b)(3)'s distinct *predominance* requirement in greater detail below. In any event, construing Defendant's arguments as attendant to Plaintiffs' Rule 23(a)(2) *commonality* burdens, they fail to persuade. The gravamen of Defendant's arguments actually go to the *merits* of Plaintiffs' claims, rather than whether the common questions they identify are sufficient for *commonality* purposes. *See, e.g.,* ECF No. 35 at

4

6 ("Contrary to Plaintiffs' self-serving testimony, CGP did and still does have a policy that *complies with* Colorado Wage and Hour Laws." (emphasis added)); *id.* at 7 ("[T]here can be no question that Chenega, by its clear policies, *permitted* security guards to take 10-minute rest breaks." (original emphasis)). But questions regarding the lawfulness of Defendant's conduct, which is to say questions regarding the *merits* of Plaintiffs' claims, do not bear in the Court's commonality analysis. *See, e.g., McCormick*, 2025 WL 2958834, at *3 (explaining that whether plaintiffs "will ultimately prevail on the merits" of their claims "does not bear, at the certification stage, on the Court's commonality analysis" and collecting cases).

To the extent that Defendant argues individualized issues predominate, thus defeating commonality, the Court is unpersuaded. That, for example, some putative class members may have received a differing number of rest breaks relative to others is insufficient to show Plaintiffs have not identified or put forward a question of law or fact that is common to the class and its claims. *Compare* ECF No. 35 at 8; 11, *with Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982) ("[E]very member of the class need not be in a situation identical to that of the named plaintiff." (citation modified)); *and DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010) (observing that courts "do not require" named plaintiffs to "prove either every class member had actually been subjected to the controverted practices or every class member had actually suffered constitutionally-cognizable harm as a result of the practices"). Especially where, as a general matter, the Court must scrutinize the parties' briefing for common contentions, rather than for noncommon ones, *see Sherman v. Trinity Teen Sols., Inc*., 84 F.4th 1182,

1193 (10th Cir. 2023), and notably Defendant represents that "all proposed class members share similar duties and are *subject to the same policies*," ECF No. 35 at 9–10 (emphasis added).[4] *See also Stricklin*, 594 F.3d at 1197; *Owino*, 60 F.4th at 444; *Pruess v. Presbyterian Health Plan, Inc.*, 745 F. Supp. 3d 1218, 1236 (D.N.M. 2024). Indicated above, whether Defendant *violated* such policies is an entirely different matter that lacks force in the Court's *commonality* analysis. *See, e.g., McCormick*, 2025 WL 2958834, at *3.[5]

---

[4] This underscores that Plaintiffs' have met their commonality burden as to *all* of their claims, particularly where Defendant reiterates that it has a "standard operating procedure" that ensures "full compliance with Colorado's rest break requirements." ECF No. 35 at 10. Again: the issue of Defendant's compliance—which concerns the merits of Plaintiffs' claims—does not bear on whether Plaintiffs have met their commonality burden. And in any event, this argument proves the point, essentially conceding that Plaintiffs were subject to the same overtime policies and rest break policies. *See, e.g., id.* at 9–11; *id.* at 16 (arguing that Plaintiffs fail to argue "as to how *the payroll practice* violates applicable state and federal overtime" law (emphasis added)); *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (9th Cir. 2022) ("Commonality is necessarily established where there is a class-wide policy to which all class members are subjected." (citation modified); *Suaverdez*, 2021 WL 4947238, at *4.

[5] In this way, Defendant's apparent efforts to generate factual distinctions between class members—for instance, that they were "under the supervision of different supervisors" or that supervisors had the ability to schedule meal and rest breaks—are unavailing, in light of the common policies to which all class members were subjected, the common questions that Plaintiffs have identified, and the fundamental nature of the Court's *commonality* inquiry. *See Golden v. Quality Life Servs., LLC*, Civ. No. 22–579 GJF/GBW, 2023 WL 8112714, at *5 (D.N.M. Nov. 22, 2023) ("Thus, a successful plaintiff must identify some unifying thread among the members' claims that warrants class treatment—not issues identical as to each member." (citation modified)). *See also* ECF No. 42 at 2, 5; ECF No. 42-1 at 2. Particularly where such evidence indicates that Defendant had a policy explicitly stating employees "will be provided meal and rest periods as required by law," ECF No. 35-1 at 2, and common questions that Plaintiffs have identified regarding the meal and rest breaks are whether Defendant "required [class members] to perform work during" meal breaks and whether Defendant "affirmatively permitted . . . [class members] to take a ten-minute rest break," ECF No. 30 at 8. And where Defendant offers evidence of current employees who, for example, have "never been prevented from or felt unable to take a rest break," ECF No. 35-3 at 4, the Court takes note of such evidence, but agrees with Plaintiffs that such evidence does not defeat commonality, *see* ECF No. 42 at 3. *See also Avendano v. Averus, Inc.*, No. 14–cv–01614–CMA–MJW, 2015 WL 1529354, at *7 (D. Colo. Mar. 31, 2015) ("[S]uch declarations do not definitively prove that Defendants did not have a policy in place, only that a policy might not have been uniformly enforced . . . Additionally, Plaintiff is correct that, at this stage in this proceeding, courts generally afford little importance to the so-called 'happy camper' affidavits of co-workers offered by defendants at this stage of litigation." (citation modified)).

*Typicality.* The Court agrees with Plaintiffs that they have met their typicality burden. *See, e.g.,* ECF No. 30 at 9. Defendant appears to argue Plaintiffs have not done so by incorporating their *commonality* and *predominance* arguments. *See, e.g.,* ECF No. 35 at 8, 12, 14. At bottom, Defendant argues that Plaintiffs "do not meet the . . . typicality [requirement] because their experiences do not reflect those of the proposed class." *Id.* at 4. Of course, *commonality* and *typicality* arguments tend to merge, *see Wal-Mart*, 564 U.S. at 350 n.5, and even considering all of Defendant's *commonality* arguments as attendant to whether Plaintiffs' claims are typical of the class, *see* Fed. R. Civ. P. 23(a)(3), they fail to persuade that Plaintiffs have not met their *typicality* burden. *See, e.g., Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." (citation modified)); *Milonas*, 691 F.2d at 938 (concluding commonality and typicality requirements were met where "all the [class members] were in danger of being subjected to the [challenged] practices"); *McCormick*, 2025 WL 2958834, at *4 (collecting cases).

At bottom, Plaintiffs and putative class members were subject to the same policies, *see, e.g.,* ECF No. 30 at 9–10, from which their claims arise. Thus, they have met their typicality burden. *See, e.g., McCormick*, 2025 WL 2958834, at *4 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." (citation modified)); *White v. Gen. Motors LLC*, No. 1:21–cv–00410–CNS–MEH, 2023 WL 3278460, at *11 (D. Colo. May 5,

2023). Indeed, courts have concluded in class actions involving meal and rest break violations that any factual differences in class members' experience do not defeat typicality, as plaintiffs' claims proceed on the same theory as other class members. *See, e.g., Sobolewski v. Boselli & Sons, LLC*, No. 16–cv–01573–RM–STV, 2017 WL 6945045, at *4 (D. Colo. Nov. 15, 2017), *report and recommendation adopted*, No. 16–cv–01573–RM–STV, 2018 WL 3838140 (D. Colo. June 13, 2018).

*Adequacy.* The Court agrees with Plaintiffs they have met their adequacy burden. *See* ECF No. 30 at 10; Fed. R. Civ. P. 23(a)(4). Central to Defendant's disagreement is that Plaintiffs seek to represent a class that would include "supervisors and non-supervisors [as well as] union and nonunion members." ECF No. 35 at 13. To the extent this argument is premised on any factual distinctions between class members, the Court has rejected this argument as to Plaintiff's other Rule 23 burdens and does so again here. *See, e.g., D.B.U.* at 349 F.R.D. at 239. The Court's *adequacy* inquiry looks to whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *White*, 2023 WL 3278460, at *12 (citation modified). Consideration of these issues confirms that Plaintiffs have met their adequacy burden.

*First*—despite Defendant's effort to generate factual differences—neither Plaintiffs nor their counsel have any conflicts of interest with potential class members. *See, e.g.,* 1 Newberg and Rubenstein on Class Actions § 3:58 (6th ed.) ("[N]ot every potential distinction between the proposed representative and other class members will render the representative inadequate." (citation modified)). Plaintiffs assert the same theories of

liability arising from Defendant's conduct as all other class members. This demonstrates that no conflicts exist such that Plaintiffs' representation would be inadequate under Rule 23(a)(4). *See, e.g, White*, 2023 WL 3278460, at *12; *D.B.U.*, 349 F.R.D. at 239 (concluding petitioners met *adequacy* burden where "they d[id] not seek any unique relief contrary to the relief they [sought] on behalf of the class"). Therefore, it is unpersuasive for *adequacy* purposes that, according to Defendant, Plaintiffs were sergeants, *see* ECF No. 35 at 12–13, who seek to represent other types of employees (e.g., guards), when the theory of relief that Plaintiffs seek is the same, and certainly not contrary, to other class members. *See, e.g.,* ECF No. 42 at 6; *D.B.U.*, 349 F.R.D. at 239.[6]

*Second*, it's clear that Plaintiffs and their counsel will vigorously prosecute this action on behalf of the class. *See White*, 2023 WL 3278460, at *12. Counsel for Plaintiffs and the class have litigated numerous class actions, *see* ECF No. 30 at 11, and are "amply qualified to serve as class counsel in this case," *D.B.U.,* 349 F.R.D. at 239–40. *See also McCormick*, 2025 WL 2958834, at *5 ("Here, counsel collectively have adequate class experience."). Further, counsel have litigated this case for over one year, up to and including now, the certification stage, underscoring their commitment to this case's prosecution. *See, e.g., id.* at 240; *White*, 2023 WL 3278460, at *12.

---

[6] To the extent that Defendant argues some class members may be subject to a union agreement that contains an arbitration and grievance provision, whether any individual class member's dispute or potential claim is subject to arbitration based on their union membership is not an issue before the Court at this time—and certainly does not bear on any Rule 23 factor, including whether Plaintiffs are or will be adequate class representatives. *Cf.* ECF No. 35 at 13. In sum, the question of whether a claim is arbitrable is not the same as whether Plaintiffs have shown that litigating their claims on a class basis is appropriate. *Cf. Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1122 (9th Cir. 2020) ("Class certification and compelling arbitration are not the same.").

Fundamentally, there is no indication that counsel "have conflicts of interest with any class members or that counsel will not vigorously prosecute this action on behalf of the class." *McCormick*, 2025 WL 2958834, at *5 (citation modified). Accordingly, Plaintiffs have shown by a preponderance of the evidence that they and class counsel will "adequately protect the class's interests" and prosecute this action. *White*, 2023 WL 3278460, at *12 (citing Fed. R. Civ. P. 23(a)(4)).

* * *

For the reasons set forth above, Plaintiffs have, by a preponderance of the evidence, satisfied Rule 23(a)'s threshold certification requirements. *See* Fed. R. Civ. P. 23(a). The Court now proceeds in its analysis of Plaintiffs' certification motion under Rule 23(b)(3).

### ii.    Rule 23(b)(3)

Plaintiffs contend that they have satisfied Rule 23(b)(3)'s superiority and predominance requirements. *See, e.g.,* ECF No. 30 at 11. The Court considers Rule 23(b)(3)'s requirements in turn, ultimately concluding that Plaintiffs have shown by a preponderance of the evidence that these requirements have been met. *See, e.g., White*, 2023 WL 3278460, at *13 (explaining Rule 23(b)(3)'s predominance requirement); *McCormick*, 2025 WL 2958834, at *12 (explaining Rule 23(b)(3)'s superiority requirement).

**Superiority.** To satisfy Rule 23(b)(3)'s superiority requirement, Plaintiffs must show that "a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *White*, 2023 WL 3278460, at *16 (quoting Fed. R. Civ. P.

23(b)(3)); *see also id.* (explaining "pertinent factors" in superiority analyses). Although the parties do not meaningfully discuss Rule 23(b)(3)'s superiority requirement, the Court, in conducting its own rigorous analysis of Rule 23's requirements, *see, e.g., Wal-Mart Stores*, 564 U.S. at 351, concludes that permitting litigation of Plaintiffs' claims on a class basis is superior to litigating them on an individual basis. *See also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (citation modified)). Given the nature of Plaintiffs' wage and hour claims, and that the class is comprised solely of individuals residing in this judicial district, "concentrating the litigation is desirable," *White*, 2023 WL 3278460, at *16, and the Court discerns few difficulties in managing a class action, *see* Fed. R. Civ. P. 23(b)(3). *See also McCormick*, 2025 WL 2958834, at *12. This is not, for instance, a case where Plaintiffs seek certification of "what are essentially personal injury cases, where class members may have individualized interests in prosecuting their own, separate actions." *White*, 2023 WL 3278460, at *16 (citing *In re Pac. Fertility Ctr. Litig.*, No. 18–cv–01586–JSC, 2020 WL 3432689, at *7 (N.D. Cal. June 23, 2020)). Accordingly, Plaintiffs have satisfied their Rule 23(b)(3) *superiority* burden. *See also McCormick*, 2025 WL 2958834, at *12; *Menocal*, 882 F.3d at 915.

**Predominance.** The parties devote their Rule 23(b)(3) briefing to whether the "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). *Compare* ECF No. 30 at 11–14, *with* ECF No. 35 at 8. As noted above, the parties' *predominance* arguments largely

overlap with their *commonality* and *typicality* arguments. *See id.* ("Plaintiffs' claim fails to meet the commonality, typicality, and predominance requirements and instead invites a case-by-case analysis that defeats class treatment."). Explained further below, the Court agrees with Plaintiffs that they have met their *predominance* burden.

*First*, the Court must "characterize the issues in the case as common or not." *White*, 2023 WL 3278460, at *13 (D. Colo. May 5, 2023) (citation modified). *See also id.* (explaining this is first in the "two-step approach" to "predominance inquiries"). This inquiry "begins with the elements of the underlying cause[s] of action." *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1175 (10th Cir. 2023) (citation modified). Explained below, elements of all of Plaintiffs' claims are "susceptible to generalized proof" and certainly predominate "over [any] that are not." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (citation modified); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Take Plaintiffs' claims for failure to pay overtime premiums under Colorado law (and even the FLSA—but which the Court discusses in its *collective action* analysis). *See* ECF No. 7 at 11, 13. These claims, whose elements fundamentally concern whether Defendant paid Plaintiffs and class members any wages and overtime that were due, *see, e.g., Rayfield v. Sandbox Logistics, LLC*, 217 F. Supp. 3d 1299, 1300 (D. Colo. 2016), are susceptible to generalized proof and present a common issue for *predominance* purposes. These claims are attendant to and arise from Defendant's wage policies and practices—Defendant acknowledges as much. *See* ECF No. 36 at 16 (arguing "Plaintiffs fail to allege how the *payroll practice* is unlawful and *the practice itself* is facially unlawful"

12

(emphasis added)). And while Defendant argues that Plaintiffs' claims lack merit, *see id.*, this argument proceeds from the premise that Plaintiffs and class members were subject to the same wage policies. *See also White*, 2023 WL 3278460, at *3 ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). This acknowledgment, which enjoys additional support in the record, *see, e,g.,* ECF No. 30-1 at 3, dooms Defendant's *predominance* challenge to Plaintiffs' claims. *See, e.g., Felps v. Mewbourne Oil Co., Inc.*, 336 F.R.D. 664, 676–77 (D.N.M. 2020) (collecting cases in support of the proposition that where plaintiffs and putative class members are subject to a "corporate policy" they have met *predominance* burden, despite any individualized questions as to individual class members' damages). At bottom, because Plaintiffs' claims arise from Defendant's wage policies, there are "common, aggregation-enabling, issues" attendant to these claims, and explained further below, these common issues are certainly "more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (citation modified)).

Turn now to the rest and meal break claims. As with Plaintiffs' overtime claim, these claims are susceptible to generalized proof and likewise present common issues for *predominance* purposes. *See, e.g., Pilmenstein v. Devereux Cleo Wallace*, 492 P.3d 1059, 1069 (Colo. App. 2021) ("And because the rest break provision implements a provision of the Wage Claim Act, an employee alleging a violation of the rest break provision can bring a private damages claim under section 8-4-110(2).") (Pawar, J.,

concurring); *By the Rockies, LLC v. Perez*, 575 P.3d 445, 447 (Colo. 2025). As for the

rest break claims, Defendant again acknowledges it had a policy governing these breaks.

*See* ECF No. 35 at 7 ("Thus, there can be no question that Chenega, by *its clear policies*,

*permitted* security guards to take 10-minute rest breaks." (first emphasis added)); ECF

No. 35-3 at 8. So too with the meal break claims. *See, e.g.,* ECF No. 35-3 at 4; *id.* at 18;

ECF No. 30-4 at 2; ECF No. 35 at 16 (observing that "CGP [had a] policy and practice

concerning meal breaks"). These record-supported acknowledgments, as with Plaintiffs'

overtime claims, are sufficient to demonstrate that Plaintiffs' claims present common

issues—and, explained further below, demonstrate that Plaintiffs have met their

*predominance* burden for their rest and meal break claims. *See, e.g.,* ECF No. 7 at 12;

*Vasquez v. Leprino Foods Co*., No. 1:17–cv–00796–AWI–BAM, 2020 WL 1527922, at

*17 (E.D. Cal. Mar. 31, 2020) (concluding plaintiffs met *predominance* burden on meal

and rest break claim because "a central common question for [their] meal and rest break

claim is whether [the defendant's] class-wide policies and practices effectively resulted in

employees being placed on call during breaks" and "answering this common question

d[id] not require a great deal of individualized proof" (citation modified)); *Espinosa v.

Genesis Healthcare, Inc*., No. CV 20–688–DMG (JCx), 2021 WL 2497938, at *15 (C.D.

Cal. Mar. 31, 2021) (concluding meal and rest break subclasses satisfied *predominance*

requirement where "common issues predominate[d] over individual issues," including

whether the defendants' "meal and rest break policies fail to provide meal and rest break

premiums" and whether the defendants "violated their duty to provide employees the

opportunity to take uninterrupted meal breaks and short rest breaks"). Particularly where

14

the theory of Plaintiffs' case concerns the "same alleged course of conduct" by Defendant—violating class-wide rest and meal break policies—which is "at the heart of all putative class members' claims," thus "predominating over any potential individual differences." *O'Dowd v. Anthem, Inc.*, No. 14–cv–02787–KLM–NYW, 2019 WL 4279123, at *9 (D. Colo. Sept. 9, 2019).[7]

Accordingly, because all of Plaintiffs' claims "turn on evidence that is susceptible to generalized, class-wide proof,'" *White*, 2023 WL 3278460, at *14, the Court concludes that the "issues [their] claims and this class action present are common," *id.*, and proceeds to the second step of its *predominance* inquiry.

*Second*, comparing the "issues in this case that are subject to common proof against the issues subject *solely* to individualized proof," *id.* at *15, the Court agrees with Plaintiffs that common issues predominate. *See, e.g.,* ECF No. 30 at 12. As discussed above, Defendant acknowledges Plaintiffs and class members were subject to class-wide

---

[7] Defendant argues that Plaintiffs' meal break claim is "now moot" because Defendant "satisfied this claim" before Plaintiffs sought class certification, and therefore certification on this claim is improper. ECF No. 35 at 15. The Court disagrees. To the extent any evidence in the record demonstrates that Plaintiffs received compensation for meal breaks, such evidence amounts to a letter from Defendant to Plaintiff Lage and represents that this relief was provided in February 2025. *See* ECF No. 30-3 at 1. Defendant provides no evidence for the Court to determine whether such relief was *actually* provided, and whether it was provided to *both* named Plaintiffs or any class members. *Cf.* ECF No. 35 at 15. Plaintiff Kalantari declares that even after an investigation into Defendant's meal break policies resulted in payment of due wages "from November 1, 2021 until October 1, 2022," ECF No. 30-1 at 3, for the following two years "Chenega failed to correct its meal break policy," *id.* at 4, resulting in Defendant submitting to her a "a check for meal breaks" but without "includ[ing] a breakdown of the hours and/or meal breaks it intended to compensate [her] for," *id.* In sum: There is insufficient evidence for the Court to conclude that Plaintiffs' claims are moot. *See, e.g., Bishop v. U.S. ex rel. Holder*, 962 F. Supp. 2d 1252, 1269 (N.D. Okla.), *aff'd on other grounds Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014) ("The defendant bears the burden of proving mootness . . . [and] this burden is a heavy one." (citation modified)). *See also* ECF No. 42 at 8. And to the extent that Plaintiffs *have* received such payments, such payments speak more toward the individualized nature of any *damages* to which Plaintiffs or class members may be entitled based on Defendant's meal break violations—which is insufficient to defeat *predominance*. *See, e.g., Felps,* 336 F.R.D. 664, 676–77; *White*, 2023 WL 3278460, at *16.

15

policies, thus giving rise to questions common to the class. Thus, given the nature of Plaintiffs' claims and the class-wide policies attendant to them, this is not a case "where as a practical matter the resolution of these common questions breaks down into an unmanageable variety of individual legal and factual issues." *White*, 2023 WL 3278460, at *15. Indeed, courts routinely conclude wage claims, such as Plaintiffs' claims here, survive *predominance* scrutiny. *See, e.g., Felps*, 336 F.R.D. at 675–76 (collecting cases); *Florece v. Jose Pepper's Restaurants, LLC,* No. 20–2339–ADM, 2021 WL 5038773, at *5 (D. Kan. Oct. 29, 2021) (same). And to the extent that class members' damages would need to be determined on an individual basis, this does not defeat *predominance. See, e.g., Felps*, 336 F.R.D. at 676 (observing that "damages determinations are individual in nearly all wage-and-hour class actions" and that "courts routinely have held that damages calculations alone cannot defeat certification" (citation modified)). Especially where, as Plaintiffs observe, they have met their Rule 23(b)(3) burdens, it is more efficient to proceed on a class basis, and if necessary, the Court can later address any individualized issues with class members' damages. *See* ECF No. 30 at 14.

Accordingly, after engaging in its two-step *predominance* analysis, *see, e.g., White*, 2023 WL 3278460, at *13, the Court concludes that Plaintiffs have met their *predominance* burden by a preponderance of the evidence.

\* \* \*

For the reasons set forth above, certification of Plaintiffs' proposed class is appropriate. They have satisfied Rule 23(a) and Rule 23(b)(3)'s requirements by a preponderance of the evidence. The Court is mindful, of course, that certifying the

16

proposed class under Rule 23 is not dispositive of their or any class members' claims. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen*, 417 U.S. at 178. After conducting its "rigorous analysis" of the class certification requirements, the Court answers this question affirmatively. *See Wal-Mart*, 564 U.S. at 351. The Court discusses Plaintiffs' request regarding notice and opt-out forms, *see* ECF No. 30 at 15, in its discussion of their request for collective action notice and opt-in consent forms below.

### B. Conditional Collective Action Certification

Plaintiffs seek conditional collective action certification. *See* ECF No. 30 at 15–16. The Court agrees with Plaintiffs that collective certification is proper. *See id.*

***Conditional Certification.*** The FLSA permits "conditional [collective action] certification" of employees who are "similarly situated." *See, e.g., Bingham v. doTERRA Int'l, LLC*, No. 2:23–cv–00707–DBB–DBP, 2024 WL 1973342, at *2 (D. Utah May 3, 2024). In determining whether conditional certification is proper, the Court looks to whether plaintiffs have put forth "substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Robertson v. REP Processing, LLC*, No. 19–cv–02910–PAB–NYW, 2021 WL 4255027, at *1 (D. Colo. Sept. 16, 2021) (citing *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). This is a "lenient standard," *id.* (citation modified), that imposes a "low burden" on plaintiffs, *Bingham*, 2024 WL 1973342, at *2.

Plaintiffs have cleared their low burden, *id.*, of showing that conditional collective certification is proper. As cited and discussed above, Plaintiffs—and Defendant—have submitted evidence showing that they and potential collective members were subject to the same wage policies from which their federal wage claims arise. *See also* ECF No. 42 at 10; ECF No. 35 at 6. These are more than substantial allegations showing they "were the victims of a single decision, policy, or plan." *Robertson*, 2021 WL 4255027, at *1 (citation modified); ECF No. 42 at 10. At bottom, Plaintiffs' allegations and evidence are sufficient to establish that there may be other "similarly-situated putative collective action plaintiffs," *Beall v. SST Energy Corp.*, No. 15–cv–01741–MSK–NYW, 2016 WL 286295, at *2 (D. Colo. Jan. 25, 2016), which are "enough to authorize notice to the putative . . . members" of Plaintiffs' collective action, *Robertson*, 2021 WL 4255027, at *2 (D. Colo. Sept. 16, 2021) (citation modified). Defendant's contrary arguments—that Plaintiffs are inadequate collective representatives, and that they cannot prevail on the *merits* of their FLSA claims—fail to persuade, as the Court's inquiry at this preliminary stage concerns only whether Plaintiffs have shown they and putative collective members were subject to the same policies. *Compare Robertson*, 2021 WL 4255027, at *1, *with* ECF No. 35 at 18.

***Notice.*** Because conditional certification is proper, the Court turns now to Plaintiffs' proposed collective action notice. *See* ECF No. 30 at 2, 17; *Robertson*, 2021 WL 4255027, at *4 ("Once the Court concludes that conditional certification of an FLSA collective action is appropriate, the Court may authorize plaintiff to disseminate a proper notice and opt-in consent form to putative class members." (citation modified)). Defendant proposes modifications to Plaintiffs' notice, and "requests that the parties confer regarding

Plaintiffs' proposed notices and methods of distribution." ECF No. 35 at 20. The Court

agrees with Defendant that the proper course is to order conferral among the parties as

to Plaintiffs' proposed notice and consent form. *See, e.g., Roberts v. Sidwell Air Freight*

*Inc*., No. C21-5912 BHS, 2022 WL 16949565, at *9 (W.D. Wash. Nov. 15, 2022) ("The

parties] should have an opportunity to meet and confer . . . regarding notice. Such a

meeting benefits both the parties and the Court." (citation modified)). The parties shall

submit a joint status report containing a stipulated notice and consent form within 14 days

of this Order. *See, e.g., Johnson v. Acad. Mortg. Corp*., No. 2:12–cv–276 TS, 2012 WL

5416200, at *2 (D. Utah Nov. 2, 2012). To the extent the parties cannot agree, they shall

submit a joint status report by the same deadline, explaining the bases of their

disagreement and each party's suggestion for resolution. *See Roberts*, 2022 WL

16949565, at *9; *Madsen v. Sidwell Air Freight*, No. 1:23–cv–0008–JNP, 2024 WL

1160204, at *16 (D. Utah Mar. 18, 2024); *Abrams v. City of Albuquerque*, No. 10–0872

MV/RHS, 2013 WL 11336856, at *8 (D.N.M. Sept. 24, 2013).

The Court notes that Plaintiff likewise requests the Court's approval of its *class

action* notice and opt-out forms. *See* ECF No. 30 at 15. At this time, the Court declines to

approve such forms. Plaintiffs shall confer with Defendant regarding such forms—

including conferral regarding potential class members to whom such forms may be sent,

as discussed below—and in their joint status report Plaintiffs shall submit final proposed

class notice and opt-out forms for the Court's review and approval. Conferral is

particularly appropriate here, where in their reply brief Plaintiffs "agree" to remove the jobs

of "lieutenants and captains" from their originally proposed class definition and have not

submitted notice and opt-out forms that reflect this revision, if the parties believe that such a revision to Plaintiffs' proposed forms is appropriate. ECF No. 42 at 7.

***Production of Potential Members.*** Plaintiffs also seek an order "directing [Defendant] to provide the names and contact information for all potential class members within 14 days of any order approving this motion." ECF No. 30 at 17. Such a request is proper, particularly where Defendant has provided "no specific reason why it should not be required to provide" such a list. *Gomez v. Epic Landscape Prods., L.C.*, No. 2:22–CV–02198–JAR–ADM, 2023 WL 3159604, at *5 (D. Kan. Apr. 28, 2023). Accordingly, Defendant shall provide Plaintiff with a such a list, containing the names and contact information for all potential class and collective members, within 14 days of this order. The parties shall indicate the status of such production in a separate section of their joint status report.

***Equitable Tolling.*** Finally, Plaintiffs seek equitable tolling of the FLSA statute of limitations. *See* ECF No. 30 at 18. Defendant does not challenge Plaintiffs' request. *Cf.* ECF No. 35. Regardless, equitable tolling in FLSA collective actions is permissible, and has frequently been ordered by courts. *See, e.g., Kenney v. Helix TCS, Inc.*, No. 17–cv–01755–CMA–KMT, 2018 WL 722458, at *3 (D. Colo. Feb. 5, 2018); *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, No. 15–cv–02324–RBJ, 2017 WL 4621276, at *2 (D. Colo. Aug. 3, 2017); *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181–82 (D. Colo. 2012). The Court finds the reasoning of these cases persuasive, and that in the interest of justice, the applicable statute of limitations is proper. *See, e.g., Kenney*, 2018 WL 722458, at *3. Accordingly, after considering the unique nature of FLSA collective

20

actions and the relevant *tolling* factors, *see, e.g., Stransky*, 868 F. Supp. 2d at 1181, the Court tolls the applicable statute of limitations. Although Plaintiffs appear to seek tolling from January 28, 2025, which is the date this lawsuit was filed, *see* ECF No. 30 at 19, the Court declines to adopt Plaintiffs' request to toll the statute of limitations from that time, *see Stransky*, 868 F. Supp. 2d at 1182. Plaintiffs sought certification and tolling on August 1, 2025, and the Court determines that this is the proper date from which to toll the applicable statute of limitations. *See id.* Accordingly, statute of limitations for opt-in members of the overtime sub-class is equitably tolled from August 1, 2025, until 90 days after such opt-in plaintiffs receive notice of this lawsuit. *See id.*; *see also Bracamontes*, 2017 WL 4621276, at *1 ("The court will equitably toll the statute of limitations and allow for notice to apply to claims dating back to the date plaintiffs moved for conditional certification." (citation modified)).

## II.    CONCLUSION

Consistent with the above analysis, Plaintiffs' Motion for Hybrid Conditional Class and Collective Action Certification, ECF No. 30, is GRANTED IN PART and DENIED IN PART.

The motion is GRANTED to the extent that Plaintiffs seek certification of their Rule 23 class and conditional certification of their collective action. Pursuant to Federal Rule of Civil Procedure 23(b), Plaintiffs' class and subclass as proposed in the certification motion, *see, e.g.,* ECF No. 30 at 6, with the modification set forth in Plaintiffs' Reply, *see* ECF No. 42 at 7, are certified under Rule 23(b)(3). Pursuant to § 216(b), the Court further certifies Plaintiffs' proposed collective. *See, e.g.,* ECF No. 7 at 10. Plaintiffs Keya

21

Kalantari and Ethan Lage are named as class representatives. Pursuant to Federal Rule of Civil Procedure 23(g), the Wilhite & Miller Law Firm is appointed as class counsel.

The motion is DENIED to the extent that Plaintiffs seek immediate approval and issuance of their proposed notice and consent forms, as well as immediate issuance of their class notice and opt-out forms. As discussed above, the parties are ORDERED to confer regarding Plaintiffs' proposed forms and file a joint status report as to stipulated notice and consent forms—or, if they cannot reach such stipulation, explanations for their respective positions—within 14 days of this Order. Defendant is ORDERED to produce a list containing names and contact information of class and possible collective members within 14 days of this Order. The parties SHALL indicate the status of such production in a separate section of their joint status report.

DATED this 30th day of March 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

22